## AFFIDAVIT OF SPECIAL AGENT ROBERT J. OLSEN

I, Robert J, Olsen, Special Agent with the Drug Enforcement Administration ("DEA"), being duly sworn, depose and state as follows:

### I.  INTRODUCTION

1.     I have been a Special Agent with the DEA since 1995 and am currently assigned to the Worcester HIDTA Task Force of the New England Field Division.  During the course of my employment with the DEA, I have received specialized training regarding the activities of narcotics traffickers and various aspects of drug investigation, including the methods used to (a) package, transport, store and distribute controlled substances and (b) to conceal and launder the proceeds of drug trafficking.

2.     In addition to my training, I have had extensive experience in the investigation of the activities of drug traffickers.  Since joining the DEA, I have participated in hundreds of drug investigations, both as a case agent and in subsidiary roles, relating to the distribution of controlled substances, including marijuana, cocaine, cocaine base, heroin, oxycodone and other illegal substances.  I have participated in almost all aspects of drug trafficking investigations including, but not limited to, acting in undercover capacities, conducting surveillance, using confidential informants, executing arrest and search and seizure warrants, and conducting court-authorized electronic surveillance.  I have participated in the debriefing of numerous defendants, informants and witnesses who had personal knowledge regarding large-scale drug trafficking organizations. I have sworn out affidavits in support of search warrants, arrest warrants, wire communications intercepts, tracking warrants and other applications, and have testified in federal and state court proceedings to include trials, grand juries and hearings.

3.      I make this affidavit in support of an application for a criminal complaint and arrest

warrant charging Deana MARTIN with the conspiring to distribute controlled substances and to

possess controlled substances with intent to distribute, in violation of 21 U.S.C. §§ 846 and

841(b)(1)(B)(vii).

4.      Over numerous months of investigation, I have become familiar with the operations

of NORTHERN HERB (*a/k/a* Northernherb.com), an illegal marijuana delivery service that

MARTIN operated in Massachusetts from 2015 until August 2018 and that collected

approximately $15 million in black-market marijuana sales.  I have personally spoken with

numerous individuals who previously worked for NORTHERN HERB regarding NORTHERN

HERB's operations and personnel.  I have also coordinated with Internal Revenue Service

Criminal Investigation ("IRS-CI") and with other agents who have been involved in the

investigation of NORTHERN HERB. The facts in this affidavit are based on my personal

observations and interactions as well as information derived from other law enforcement agents,

law enforcement reports, records produced by various parties (including emails produced via

search warrant), agent surveillance,[1] and other sources.

5.      This affidavit does not contain every fact known to me with respect to this

investigation.  Rather, it contains only those facts that I believe to be necessary to establish

probable cause for issuance of the requested criminal complaint and arrest warrant.  Similarly,

---

[1] Throughout this affidavit, descriptions of agent or investigator observations are derived either
from investigator surveillance or from investigator review of surveillance footage, including
footage taken from one or more stationary cameras (often referred to as pole cameras).
References to "investigators" or "agents" in this affidavit refer to one or more investigators or
agents, including task force officers (such that the plural may be used to refer to a single
investigator).  References to observations made "at" a location include observations that
occurred in the vicinity of such location (for example, in the parking lot outside such location).

when describing information derived from a particular source (for example, an email, a report, a financial statement, an interview, or an instance of agent surveillance), this affidavit does not seek or purport to describe all of the information reflected in such source or convey information verbatim but, rather, simply seeks to summarize select portions or excerpts of the information reflected in that source.

## II.   NORTHERN HERB

6.       NORTHERN HERB was a black-market marijuana distributor and delivery service operating in Massachusetts from 2015 until August 2018.  During that time, NORTHERN HERB had revenue of more than $14 million, yet operated entirely under-the-table and apparently did not pay taxes on its sales or employees.  The primary owner and manager of NORTHERN HERB was Deana MARTIN (born 1967).

7.       NORTHERN HERB operated a website, NorthernHerb.com, that offered marijuana for sale and delivery to the public.[2]  As of July 29, 2018, the NORTHERN HERB website offered various types of marijuana for sale, including approximately 18 different strains of raw marijuana, as well as pre-rolled cigarettes and certain liquids, edibles, concentrates, and other products, some of which had packaging or labeling specifying their THC content.  The NORTHERN HERB website specified a minimum of $100 per order.

---

[2] Throughout this affidavit, references to "marijuana" includes both marijuana / cannabis in plant form and other items or products containing marijuana – including candy bars and other marijuana "edibles" that contain Tetrahydrocannabinol ("THC") or that otherwise fall under the statutory definition of "marijuana."  It is my understanding that NORTHERN HERB is not licensed as a retailer of recreational marijuana, and that home delivery of recreational marijuana is not permitted under Massachusetts laws or regulations.  Moreover, it appears that NORTHERN HERB relied on illegal interstate shipments of marijuana from other states into Massachusetts, and utilized various financial institutions to receive and launder the proceeds of its unlawful marijuana sales.

8.     NORTHERN   HERB   utilized   several   email   addresses   –   including "northernherbmedical@gmail.com" and "sales@northernherb.com" – in connection with its marijuana sales and deliveries.

9.     NORTHERN HERB purported to serve those seeking medical marijuana, but was not licensed with the Massachusetts Department of Public Health ("DPH") as a medical marijuana dispensary.  NORTHERN HERB regularly sold marijuana to customers who failed to show or otherwise provide proof of a medical marijuana card.

10.     In fact, NORTHERN HERB repeatedly advised potential customers that NORTHERN HERB did not require its customers to possess a medical marijuana card.  For example, an undercover law enforcement officer made two purchases of marijuana from NORTHERN HERB without being asked to show proof of a medical marijuana card.  In addition:

A. On January 13, 2017, NORTHERN HERB (via sales@northernherb.com) responded to a question of whether NORTHERN HERB required a "medical card" for purchases by writing: "[w]e deliver recreationally."

B. On January 27, 2017, NORTHERN HERB (via sales@northernherb.com) responded to a question of whether a customer needed a medical card by writing "[w]e deliver to anyone 21 plus for recreation use."

C. On January 27, 2017, NORTHERN HERB (via sales@northernherb.com) responded to an inquiry from a potential customer who stated "I'm 22, don't have a Mass Marijuana card" by giving ordering and registration instructions, including by highlighting that "the order minimum is $100."

D. On February 2, 2017, NORTHERN HERB (via sales@northernherb.com) responded to an inquiry from a potential customer by stating "you do not need a medical card."

E. On February 15, 2017, NORTHERN HERB (via sales@northernherb.com) told a customer that, while there is a place on the website to load a medical card, "it is not required."

F. On February 23, 2017, NORTHERN HERB (via sales@northernherb.com) responded to an inquiry from a potential customer by stating "we do not require a medical card."

G. On March 14, 2017, NORTHERN HERB (via northernherbmedical@gmail.com) responded to an inquiry from a potential customer ("[d]o you still need your medical card for this service") by stating "Medical card is optional."

H. On March 23, 2017, NORTHERN HERB (via northernherbmedical@gmail.com) responded to an inquiry from a potential customer was "not a medical card holder" by stating "we do not require a medical card."

I. On March 24, 2017, NORTHERN HERB (via northernherbmedical@gmail.com) responded to an inquiry from a potential customer ("[d]o I need a medical card to order?" by writing "[n]o you do not."

J. On March 25, 2017, NORTHERN HERB (via northernherbmedical@gmail.com) responded to an inquiry from a potential customer ("[d]o I need a medical card to order with you guys") by stating "[y]ou do not need a medical card to register." The potential customer then inquired as to whether she needed a medical card to

complete an order, and NORTHERN HERB replied "[y]ou do not need a medical card."

K.   On March 31, 2017, NORTHERN HERB (via sales@northernherb.com) responded to an inquiry from a potential customer by replying "we don not [*sic*] require a medical card."

L.   On April 11, 2017, NORTHERN HERB (via sales@northernherb.com) responded to an email from a potential customer by writing "[w]e don't require a medical card for you to place an order."

M.   On May 11, 2017, NORTHERN HERB (via sales@northernherb.com) responded to an inquiry from a potential customer ("I was just wondering if I need to have a medical card to place an order") by replying that it is "not necessary for you to have your medical card."

N.   On May 17, 2017, NORTHERN HERB (via northernherbmedical@gmail.com) responded to an inquiry from a potential customer by stating "[n]o you do not need a medical card to order from us."

11.   In addition to engaging in person-to-person distribution of marijuana, NORTHERN HERB also delivered marijuana without maintaining reasonable control over the delivery – including by dropping marijuana shipments in unattended locations and thereby relinquishing control over who would retrieve the marijuana.[3]  For example:

---

[3] While NORTHERN HERB asked its customers to provide a scanned copy of identification as proof of age, certain customers interacted with NORTHERN HERB solely online, thus rendering it impossible for NORTHERN HERB to ascertain whether the person placing the order was in fact the person depicted in the identification.  It seems entirely possible that a child or other individual under the age of 21 could have obtained marijuana from NORTHERN HERB by emailing or uploading a copy of someone else's identification and then placing an order and directing NORTHERN HERB to deliver it to an unattended location.

A. On June 14, 2016, NORTHERN HERB (via northerherbmedical@gmail.com) received an email from a customer[4] who directed that the delivery driver place the order in a sun porch.

B. On January 6, 2017, NORTHERN HERB (via northerherbmedical@gmail.com) sent an email to a customer who had ordered marijuana-laced cookies and other items offering to leave the order somewhere, such as "in a mailbox or in a front door area."

C. On January 25, 2017, NORTHERN HERB (via northerherbmedical@gmail.com) received an order from a customer who requested "you mail it to me."  On January 30, 2017, NORTHERN HERB wrote "we are shipping out today!"

D. On January 25, 2017, NORTHERN HERB (via sales@northernherb.com) sent an email to a potential customer offering to "leave your order somewhere safe like in a mailbox, front hallway, etc."

E. On February 9, 2017, a Northern Herb employee (using sales@northernherb.com) forwarded a customer request about having an order delivered while he was at work ("could I leave the money in the car and your driver can leave the products in my

---

[4] This customer provided an address in Worcester, Massachusetts.  The items ordered by this customer included the following: Sugar Shatter/Watermelon Indica, Sugar Shatter/Blue Raspberry Sativa, Sour Gummy Worms Indica, Rainbow Sugar Cookies Indica, Gummies Indica, and Chocolate Oreos Indica.  It is unclear whether NORTHERN HERB took any steps to ascertain whether one or more children had access to the sun porch in which these marijuana-laced candies and cookies were delivered.

car?").  In response, MARTIN replied[5] "Yes we can.  We obviously need the details."

F.  On February 11, 2017, NORTHERN HERB (via sales@northernherb.com) received an email from a customer who had ordered marijuana-laced gummy bears, gummy worms, and chocolate bars asking that NORTHERN HERB "leave it in my mailbox anytime."  NORTHERN HERB replied "[p]erfect."

G.  On February 19, 2017, NORTHERN HERB (via northerherbmedical@gmail.com) sent an email about an order that was missing certain marijuana-laced candies. NORTHERN HERB offered to deliver the missing items, and sent an email to the customer that stated "[w]e can leave it in your mailbox.  No problem at all."

H.  On March 16, 2017, NORTHERN HERB (via sales@northernherb.com) responded to inquiries from a potential customer by stating that the driver can leave the package somewhere "like a mailbox, inside a screen door, etc."  NORTHERN HERB also informed this potential customer "we do not need a medical card."

I.  On March 24, 2017, NORTHERN HERB (via northernherbmedical@gmail.com) sent an email to a potential customer and offered that "the driver can leave your package in a place of your choice, a mailbox, etc."

J.  On May 17, 2017, NORTHERN HERB (via northernherbmedical@gmail.com) responded to an inquiry from a customer who was seeking to purchase marijuana-laced gummy worms and other products by offering to "ship it to you;" the customer replied "I'll have you ship it please."

---

[5] This email was sent from deanamartin73@gmail.com, the use of which is described in more detail below.

12.     NORTHERN HERB and its principals were aware that delivering marijuana to consumers violated both federal and Massachusetts law.  In an email dated July 20, 2018, MARTIN (via deanamartin73@gmail.com) acknowledged that Massachusetts "has not created guidelines for legal delivery businesses at this point and it is not clear when they will."  The NORTHERN HERB website (*i.e.* Northernherb.com") acknowledged the illegality of marijuana distribution under federal law, stating that "[m]arijuana is included on Schedule 1 under the United States Controlled Substances Act" and that, under federal law, "manufacturing, distributing, dispensing or possession of marijuana is illegal, and individuals are subject to arrest and/or prosecution for doing so."

13.     NORTHERN HERB maintained locations in Foxboro, Massachusetts (the "FOXBORO WAREHOUSE") and, later, in Hyde Park, Massachusetts (the "HYDE PARK WAREHOUSE").[6]  NORTHERN HERB utilized these locations for the receipt, storage, packaging, and distribution of marijuana, as well as for the storage and sorting of cash derived from marijuana sales.

14.     NORTHERN HERB also utilized MARTIN's residence in Milton, Massachusetts ("MARTIN RESIDENCE") to distribute marijuana and to collect and store cash derived from the sale of marijuana.

15.     NORTHERN HERB also conducted business under the name BICOASTAL EVENTS LLC (*a/k/a* Bi-Coastal Events LLC).

---

[6] NORTHERN HERB transitioned from the FOXBORO WAREHOUSE to the HYDE PARK WAREHOUSE in July 2018.  Prior to utilizing the FOXBORO WAREHOUSE, NORTHERN HERB utilized a location in Canton, Massachusetts.

16.     NORTHERN HERB obtained large quantities of marijuana via shipments from its sources of supply, primarily from California.  NORTHERN HERB utilized various U.S. Postal Service ("USPS") post office boxes to receive packages (typically, cardboard boxes), including dozens of packages from California, and additional packages from Oregon.[7]  Agents conducting surveillance observed a pattern whereby individuals associated with NORTHERN HERB would retrieve postal packages and then transport them to the FOXBORO WAREHOUSE and then, in late July 2018, to the HYDE PARK WAREHOUSE.[8]

17.     NORTHERN HERB stored large quantities of marijuana at the FOXBORO WAREHOUSE and in late July 2018, at the HYDE PARK WAREHOUSE.  NORTHERN HERB employed numerous warehouse workers, the duties of whom included processing marijuana orders from the NORTHERN HERB website, packaging marijuana into individual bags for customer delivery, and organizing cash derived from marijuana sales.  NORTHERN HERB also employed numerous delivery drivers, who generally picked up pre-packaged marijuana orders from either one of NORTHER HERB's warehouses or the MARTIN RESIDENCE, delivered those orders, and then delivered cash proceeds back to the MARTIN RESIDENCE at the end of the day.[9]

---

[7] Many of the packages sent to post office boxes utilized by NORTHERN HERB were addressed to "I Want Candy" or the initials "IWC."  Note that Oregon and California are home to many large-scale marijuana cultivation operations, and marijuana and marijuana-related products are commonly available to consumers in those states.

[8] All reference to "agents" or "investigators" in this affidavit refer to one or more law enforcement officers, including federal agents and task force officers.  References to investigator observations are either to personal observations or to observations derived from photographs or video recordings.

[9] The transportation of marijuana by NORTHERN HERB workers generally worked as follows: (1) sources of supply sent packages of marijuana to USPS postal boxes or other addresses utilized by NORTHERN HERB; (2) a trusted NORTHERN HERB employee would retrieve the package or packages from the shipment address and transport it to the NORTHERN HERB warehouse (the FOXBORO WAREHOUSE and, later, the HYDE PARK WAREHOUSE); (3) each day, NORTHERN HERB workers at the warehouse would package marijuana orders into

18.     NORTHERN HERB customers paid for marijuana purchases via cash or via credit card.  Square, Inc. ("Square") processed millions of dollars in credit card transactions for NORTHERN HERB.

19.     NORTHERN HERB processed and organized marijuana orders using technology supplied by Indica Online ("Indica"), a company that provides a point-of-sale system for marijuana deliveries.  Between May 2016 and December 2017, Indica processed more than $7.6M in marijuana sales for NORTHERN HERB.  Between January and July 2018, Indica processed more than $6.7M in marijuana sales for NORTHERN HERB.

20.     Despite millions of dollars in sales, it does appear that NORTHERN HERB collected or remitted any state sales tax associated with its marijuana sales.

21.     As of August 2018, NORTHERN HERB employed at least 25 workers.[10] NORTHERN HERB generally paid its workers in cash, and it appears that NORTHERN HERB failed to pay or remit payroll taxes for its employees or to issue W-2s or 1099s.

---

individual brown paper bags, one for each customer; (4) each day, NORTHERN HERB workers would place a subset individual brown paper bags into large black plastic bags (resembling trash bags) and carry the large bags to vehicles at or near the warehouse; (5) each day, a trusted NORTHERN HERB employee would drive the large plastic bags containing individual brown paper bags with marijuana from the warehouse to the MARTIN RESIDENCE; (6) each day, NORTHERN HERB delivery drivers would pick up their allotments of individual brown paper bags from either the warehouse or the MARTIN RESIDENCE, often carrying the individual paper bags to their vehicles in a hard plastic case; and (7) each day, NORTHERN HERB delivery drivers would make various stops throughout Massachusetts to make customer deliveries by distributing the individual paper bags containing marijuana.

[10] On August 2, 2018, a whiteboard at the HYDE PARK WAREHOUSE listed the weekly schedule for approximately 21 different NORTHERN HERB workers.  Not included on this schedule were numerous known NORTHERN HERB employees, including MARTIN, Person 1, and Person 2.

22.     On August 2, 2018, federal law enforcement agents executed search warrants at the HYDE PARK WAREHOUSE and at the MARTIN RESIDENCE.  Agents also executed seizure warrants for several bank accounts into which NORTHERN HERB proceeds had been deposited or transferred.

23.     During the execution of the search warrant at the HYDE PARK WAREHOUSE, agents located and seized large quantities of marijuana, including but not limited to dried marijuana and various marijuana products, including products with packaging or labeling specifying the THC content.[11]  Agents also located and seized dozens of brown paper bags containing marijuana, which appeared to be packaged for delivery to customers.  Most such bags had receipts stapled to them that appeared to correspond to orders placed online, and many such bags were organized by city or region for apparent delivery.  Marijuana or brown paper bags containing marijuana were stored throughout both levels of the HYDE PARK WAREHOUSE.

24.     Agents sent drug exhibits (including marijuana plant material and edible candies) seized from the HYDE PARK WAREHOUSE to the DEA Northeast Laboratory in New York for chemical analysis.  Laboratory personnel analyzed samples of some of the exhibits and produced

---

[11] The following photographs depict some of the items found during this search:

 

certain reports regarding this analysis.  Based on these reports, I believe that the HYDE PARK WAREHOUSE contained more than 100 kg of marijuana on August 2, 2018.

25.     During the execution of the search warrant at the MARTIN RESIDENCE, agents found items including marijuana, packaging (including paper bags consistent with those used for NORTHERN HERB deliveries), and various documents relating to NORTHERN HERB.

26.     On August 2, 2018, agents seized approximately $40,000 in cash from the HYDE PARK WAREHOUSE and more than $114,000 in cash from the MARTIN RESIDENCE. Agents also seized more than $112,000 from certain bank accounts associated with NORTHERN HERB.

27.     NORTHERN HERB laundered millions of dollars in proceeds from marijuana sales through numerous bank accounts, including but not limited to accounts under the name of BICOASTAL EVENTS LLC.

### III.   OVERVIEW OF SELECT NORTHERN HERB EMPLOYEES

28.     Deana MARTIN owned and controlled NORTHERN HERB, and resided at the MARTIN RESIDENCE.   When agents executed the search warrant at the HYDE PARK WAREHOUSE on August 2, 2018, MARTIN was present at the warehouse, and her Porsche Boxter was present in the parking lot.

29.     Person 1 was a manager at NORTHERN HERB, and played a role in directing and overseeing day-to-day operations and workers at the FOXBORO WAREHOUSE and HYDE PARK WAREHOUSE.  NORTHERN HERB's Standard Operating Procedures described Person 1's role as being "[i]n charge of expenses and keeping the office running smoothly."[12]  Person 1

---

[12] This document also instructed employees that, if arrested, they were to call MARTIN or Person 1 immediately.  This document further directed that "[c]urrency should be organized by denomination then made into $5000 stacks to be vac-sealed and stored."

also played a role in arranging for the supply of marijuana to be sold and distributed by NORTHERN HERB.[13]

30.     Person 2 was an employee of NORTHERN HERB who transported bulk packages of marijuana that were intended for distribution and sale by NORTHERN HERB.[14]  Person 2 was a named owner of BICOASTAL EVENTS LLC and allowed for his name to be used on numerous accounts that were utilized to launder NORTHERN HERB's drug proceeds.[15]

31.     Person 3 was a long-tenured employee of NORTHERN HERB, and played a role in directing the preparation of marijuana shipments at the FOXBORO WAREHOUSE and HYDE PARK WAREHOUSE.  Investigators observed Person 3 at the FOXBORO WAREHOUSE on approximately 24 separate occasions between April 14, 2018 and May 15, 2018.   Records show that one or more devices associated with the nickname used by Person 3 were responsible for more than $844,000 in NORTHERN HERB sales.   Person 3 was present at the HYDE PARK WAREHOUSE when agents executed the search warrant on August 2, 2018.

32.     Person 4 was an employee of NORTHERN HERB.  While most NORTHERN HERB delivery drivers transported the cash generated from marijuana sales to the MARTIN RESIDENCE each day, Person 4 was not required to surrender the cash generated from his

---

[13] For example, an email dated July 7, 2018 attached a document that lists certain marijuana suppliers used by NORTHERN HERB, and noted that Person 1 communicates with certain of these suppliers.

[14] Person 2 was associated with numerous postal boxes utilized by NORTHERN HERB to obtain shipments from California and/or Oregon.  Agents conducting surveillance frequently observed Person 2 transporting items to and from pertinent postal boxes and to and from locations utilized by NORTHERN HERB for the receipt, storage, and distribution of marijuana.

[15] According to its Nevada Articles of Organization, Person 2 was the sole manager of BICOASTAL EVENTS LLC.  The Articles of Organization for BICOASTAL EVENTS LLC list the address of the FOXBORO WAREHOUSE.

marijuana sales in this manner.[16]  Records show that one or more devices associated with Person 4's first name were responsible for more than $1 million in NORTHERN HERB sales.  Person 4 was present at the MARTIN RESIDENCE during the execution of the search warrant, and falsely told agents that he did not work for NORTHERN HERB.

## IV.   **MARTIN's ROLE WITH NORTHERN HERB**

33.   MARTIN was not registered with DPH as a Dispensary Agent.[17]

34.   During proffers or other communications with law enforcement, numerous former employees of NORTHERN HERB identified MARTIN as the owner and person who exercised primary control over NORTHERN HERB.

35.   The FOXBORO WAREHOUSE was leased to MARTIN, doing business as BICOASTAL EVENTS.  Lease documents for the FOXBORO WAREHOUSE bear MARTIN's signature.

36.   MARTIN completed a business credit application in connection with the lease of the HYDE PARK WAREHOUSE.  This application listed the name of BICOASTAL EVENTS, with a billing address of the MARTIN RESIDENCE.[18]  MARTIN signed this application as the "Proprietor."

---

[16] During the search of the HYDE PARK WAREHOUSE, agents located a folder containing several pages of handwritten documents that were labelled "cash flow" or "cash intake."  These cash flow reports appear to reflect a reconciliation of the cash sales collected by NORTHERN HERB drivers and cash expenses paid on certain days, and some of these reports include a separate line item for Person 4's cash collections.

[17] Under Massachusetts law, anyone who works at a Registered Marijuana Dispensary must be registered with DPH as a Dispensary Agent.  *See* "An Act for the humanitarian medical use of marijuana," Massachusetts st. 2012, c. 369, § 1.  No person is authorized to operate a Registered Marijuana Dispensary without a DPH certificate of registration.  105 C.M.R. 725.00(C)(2).

[18] This application also listed MARTIN's phone number (401-500-5456) and Social Security number.

37.     MARTIN exercised ownership or control over several bank accounts into which funds derived from NORTHERN HERB sales were laundered, including the following:

A.     An account with number ending 0494, the signatory for which was MARTIN ("Account 0494").[19]

B.     An account with number ending 7124 in the name of BICOASTAL EVENTS LLC, the signatories for which were MARTIN and PERSON 2 ("Account 7124").[20]

C.     An account with number ending 2413 in the name of BICOASTAL EVENTS LLC, the signatory of which was MARTIN ("Account 2413").[21]

38.     MARTIN maintained an account with Square.[22]  Between December 2016 and April 2018, this Square account processed more than $1M in credit card transactions, and more than $900,000 was transferred from Square to Account 0494.[23]

---

[19] Bank documents for Account 0494 list the primary contact for this account as MARTIN and list MARTIN's phone number (401-500-5456) and email address (deanamartin73@gmail.com). At least as recently as May 2018, the address on the account's monthly statements was the MARTIN RESIDENCE.

[20] Bank documents for Account 7124 list an address of the FOXBORO WAREHOUSE. MARTIN and Person 2 are both signers on the account.  A corporate resolution for this account features the signatures of both MARTIN and Person 2, and identifies Person 2 as the business owner.

[21] Bank documents for Account 2413 list Person 2 as the "Beneficial Owner" of BICOASTAL EVENTS LLC and MARTIN as the "Controlling Owner."  The contact phone number for the business is 401-500-5456 (MARTIN's phone number). This account was funded in large part via a May 2018 Official Check for $270,000 paid to the order of MARTIN re: BICOASTAL EVENTS LLC, which funds derived

[22] Square records for this account list MARTIN's name, date of birth, Social Security number, phone number (401-500-5456), and email address (deanamartin73@gmail.com).

[23] In addition, Person 2 maintained an account with Square under the business name "Bi-coastal Events, LLC." Between July 2017 and April 2018, this Square account processed more than $600,000 in credit card transactions, and more than $530,000 was transferred from Square to

16

39.     MARTIN controlled and/or had access to numerous postal boxes utilized by NORTHERN HERB to obtain shipments of marijuana from California and/or Oregon.   For example:

    A.    P.O. Box 172, Westwood, MA ("Box 172"): Box 172 was opened on March 14, 2018.  The name of the business on the application is "I WANT CANDY."  The applicant was Deana MARTIN, with the phone number 401-500-5456 and the email address deanamartin73@gmail.com.[24]

    B.    UPS Box 157, 675 VFW Parkway, Chestnut Hill, MA ("Box 157"): A form dated February 22, 2018 sought authority for packages to be sent via USPS to a box in a United Parcel Service ("UPS") Store.  The name of the applicant was Deana MARTIN, with the phone number 401-500-5456 and the address of the MARTIN RESIDENCE.[25]

    C.    P.O. Box 212, Dedham, MA ("Box 212"): Box 212 was opened on March 30, 2018.  The name of the business on the application is "I WANT CANDY."  MARTIN was listed on the application as a person authorized to pick up mail from Box 212.

    D.    P.O. Box 4014, East Dedham, MA ("Box 4014"): Box 4014 was opened on February 6, 2018.  The name of the business on the application is "I WANT

---

Account 7124.  As noted, MARTIN was a signatory for Account 7124, and it appears that she controlled the funds into this account.

[24] Between March 14, 2018 and June 26, 2018, Box 172 received approximately 74 packages originating from California or Oregon.

[25] During the period of February 22, 2018 through July 9, 2018, Box 157 received approximately 62 packages from California and Oregon.

CANDY." MARTIN was listed on the application as persons authorized to pick up mail from Box 4014.[26]

E.     P.O. Box 253, Readville, MA ("Box 253"): Box 253 was opened on April 12, 2017. The name of the business on the application is BICOASTAL EVENTS, with Deana MARTIN listed as the "owner." The application lists the phone number 401-500-5456 and the email address "deanamartin73@gmail.com." The applicant's address is listed as the MARTIN RESIDENCE.[27]

40.     MARTIN also received packages relating to NORTHERN HERB at the MARTIN RESIDENCE. For example, a UPS email dated February 8, 2016 referenced a package shipped to "NORTHERN HERB" at the address of the MARTIN RESIDENCE.

41.     MARTIN was the user of the email address "deanamartin73@gmail.com," and frequently used this email address to conduct NORTHERN HERB business. For example:

A.     On April 14, 2015, deanamartin73@gmail.com sent an email to several individuals, including Person 2 and Person 4. The subject of the email was "Agenda – Northern Herb Opening Meeting April 12, 2:00," and its content described a meeting that had occurred at the MARTIN RESIDENCE. In the email, MARTIN described her plans to promote and sell marijuana-related

---

[26] Between February 12, 2018 and June 23, 2018, Box 4014 received approximately 41 packages originating from California and Oregon. These packages were in fact addressed to Box 4015, but USPS delivered the boxes to Box 4014.

[27] During the period between August 5, 2017 and July 27, 2018, Box 253 received approximately 78 packages originating from California and Oregon.

products online and to use a sales team that would be incentivized for selling 1 pound, 5 pounds, 10 pounds, and over 10 pounds of marijuana per month.[28]

B.      On May 25, 2017, deanamartin73@gmail.com submitted an insurance application, signed by MARTIN, for BICOASTAL EVENTS, doing business at the FOXBORO WAREHOUSE.

C.      On May 26, 2017, deanamartin73@gmail.com submitted a Business Service Order Agreement for BICOASTAL EVENTS, doing business at the FOXBORO WAREHOUSE, with MARTIN listed as the primary contact.

D.      On April 2, 2018, deanamartin73@gmail.com submitted a credit application, signed by MARTIN, for BICOASTAL EVENTS in connection with the contemplated lease of the HYDE PARK WAREHOUSE.

E.      On July 20, 2018, deanamartin73@gmail.com sent an email describing the growth of MARTIN's marijuana business. This email claimed, on "our busiest days, we sent a variety of products out to as many as 300 customers using 20 drivers and an office staff of 7 people." The email also described the measures taken by her business "to stay one step ahead of enforcement."

42.      MARTIN utilized, controlled, and laundered funds derived from NORTHERN HERB marijuana sales. For example:

A.      In December 2017, $30,500 in funds from Account 7124 were used to purchase a 2018 Toyota Tundra that was registered to MARTIN's husband.

---

[28] Specifically, MARTIN wrote as follows: "All sales will be handled by our own team who will get wholesale pricing from our own grows.   Sellers will be rewarded with lower wholesale prices based on the monthly volume of sales with break points at 1, 5, 10 and over 10 pound points."

B.      In April 10, 2018, $311,828.64 in funds from Account 0494 were used to pay down the mortgage on the MARTIN residence.

C.      Also in April 2018, $45,000 in funds from Account 0494 were transferred to MARTIN's personal bank account at TD Bank.

D.      In July 2018, MARTIN purchased a 2017 Porsche Boxter for $82,473.44. MARTIN made this purchase with $9,900 in cash as well as with funds that trace from several bank accounts, including Account 0494 and Account 7124.

43.     Despite controlling millions of dollars received by NORTHERN HERB, MARTIN sought to avoid the payment of taxes on NORTHERN HERB sales and revenue.  On March 30, 2018, deanamartin73@gmail.com replied to a message noting that California was set to temporarily drop cannabis taxes and stated, in part, "[z]ero taxes is still better" (*i.e.*, that selling untaxed marijuana on the black market was preferable to paying taxes on marijuana sales).

44.     In numerous federal bankruptcy filings, MARTIN failed to disclose her ownership interest in NORTHERN HERB.[29]  MARTIN utilized accounts in the name of Person 2 to deposit and launder drug proceeds to hide the nature, source, ownership, and control of these funds – in part to conceal her control of these funds from the U.S. Bankruptcy Court and/or the U.S. Trustee in connection with federal bankruptcy proceedings.

---

[29] *See* Case 1:16-bk-14269 (D. Mass.).  For example, an Official Form 107 filing in December 2016 required MARTIN and her co-debtor to list all businesses they had owned in the past four years; MARTIN and her co-debtor listed several bread- or catering-related business, but concealed MARTIN's ownership and interest in NORTHERN HERB.  MARTIN signed this form under penalty of perjury despite knowing of her ownership and role in NORTHERN HERB.

45.     In 2018, MARTIN reported having a monthly income of $80,000 (which extrapolates to $960,000 annually).[30]

## V.     **CONCLUSION**

46.     Based on the foregoing, and on my training and experience, there is probable cause to believe that Deana MARTIN managed and oversaw the black-market marijuana distribution operation of NORTHERN HERB, and that MARTIN conspired with Person 1, Person 2, Person 3, Person 4, and other individuals, to distribute controlled substances, and to possess controlled substances with intent to distribute, in violation of 21 U.S.C. §§ 846 and 841(b)(1)(B)(vii).

WHEREFORE, your affiant requests that this Court issue the requested criminal complaint and arrest warrant.

_____
Special Agent Robert J. Olsen

**Apr 1, 2019**
Subscribed and sworn to before me this ____ day of April, 2019

_____
Hon. Judith G. Dein
United States Magistrate Judge

---

[30] MARTIN reported this income in connection with a March 2018 rental application for a property in California that she intended to use for marijuana distribution.  In the application, MARTIN reported being self-employed, specified her address as the MARTIN RESIDENCE, and listed her true phone number (401-500-5456) and email address (deanamartin73@gmail.com).